LA REDDOLA, LESTER & ASSOCIATES, LLP
*Attorneys for Plaintiffs MAG LED, INC.*
*JESCO LIGHTING GROUP, LLC*
600 Old Country Road, Suite 230
Garden City, New York 11530
(516) 745-1951

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

MAG-LED, INC.and JESCO LIGHTING
GROUP, LLC,

               Plaintiffs,

    *-against-*

APOGEE LIGHTING GROUP, INC. and
FRANK ZARCONE,
               Defendants.

-------------------------------------------------------X

**COMPLAINT**

**Jury Trial Demanded**

Plaintiffs, MAG-LED, INC. ("MAG-LED") and JESCO LIGHTING GROUP, LLC ("JESCO"), individually, by their undersigned attorneys, as and for their complaint against the Defendants, based upon personal knowledge as to their own acts, and information and belief as to all other matters, respectfully set forth:

## NATURE OF ACTION

1.      Plaintiffs seek injunctive relief, as well as actual damages and punitive damages against defendants APOGEE LIGHTING GROUP, INC. ("APOGEE") and FRANK ZARCONE ("ZARCONE") for patent infringement under 35 U.S.C. §271; trademark infringement, palming off, unfair competition, false designation of origin, and false advertising under the U.S. Trademark Act ("Lanham Act")15 U.S.C. §1050 et seq., New York General Business Law § 360-I, and New York State Common Law; and breach of contract; arising from the wrongful misappropriation and

1

unauthorized use of Plaintiffs' patented inventions, the designs, features, photographs, labels, trademarks, advertising materials, and product descriptions of and for an A/C powered LED flexible tape light product manufactured and sold by MAG-LED under the trademark "MLed" and distributed by JESCO under license from MAG-LED.

2.      ZARCONE, a former employee of JESCO and sales consultant to MAG-LED, unlawfully conspired (and continues to conspire) with APOGEE to misappropriate MAG-LED's confidential information, and to infringe its patents and trademarks, and is in breach of the fiduciary duty and duty of loyalty owed to MAG-LED and JESCO under common law and a written confidentiality agreement, by the advertising, promotion, offering for sale, and sale of an inferior and infringing A/C powered LED flexible tape light products sold by APOGEE under the name Solara Flex System.

3.      Defendants plot to steal MAG-LED's and JESCO's business was planned and executed by APOGEE together with ZARCONE, both during and after the time that ZARCONE was being paid as a sales consultant for MAG-LED and/or an employee of JESCO to help develop, market and protect a confidential new technology and product, namely MAG-LED's new A/C powered LED flexible tape light product, an asset MAG-LED created, developed, built, and protected at substantial cost over the course of nearly five years.

4.      ZARCONE breached his duty of loyalty by stealing confidential information, which MAG-LED had disclosed to JESCO pursuant to confidentiality and license agreements with JESCO, and by improperly transferring such confidential information to APOGEE, who began to market and sell the identical product, under the name Solara Flex System, by falsely and misleadingly using a photograph that clearly depicted MAG-LED's own product, bearing MAG-LED's MLed trademark in its catalogue and/or brochure. (See Apogee Catalogue, Exhibit 1 hereto).

2

5.      Rather than build its own infrastructure and design through legal means, APOGEE, assisted by ZARCONE, has wrongfully and unlawfully taken and used MAG-LED's and JESCO's confidential information and technology, including, without limitation, photographs, documents, blue prints, circuit and resistor design, samples, and customers, to unfairly compete with MAG-LED and JESCO and induce their customers and clients to purchase competing A/C powered LED flexible tape lights from APOGEE instead of from them, and have thereby caused harm to Plaintiffs.

6.      By this action, Plaintiffs therefore seek: injunctive relief enjoining Defendants from(i) the making, using, offering for sale, and sale of their infringing Solara Flex System product; (ii)using, disclosing, or providing access to Plaintiffs' confidential and proprietary information and/or trade secrets; (iii) using MAG-LED's MLed trademark and pictures of MAG-LED's MLed A/C flexible LED lighting tape product; and (iv) contacting Plaintiffs' customers and/or contacts at those customers; as well as  monetary damages in an amount to be determined after trial, but at least exceeding $5 million.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction of this action under 28 U.S.C. §§331, 1338(a) and (b).This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

8.      Venue in the Eastern District is proper under 28 U.S.C. §§1391 and 1400(b), since all of the events and omissions giving rise to the Plaintiff's claims arose in Suffolk County and the Eastern District of New York. Additionally, upon information and belief, all parties currently reside or maintain a place of business in Suffolk County.

## PARTIES

9.      Plaintiff MAG-LED is a New York corporation having a place of business located at 7200 New Horizons Blvd., Amityville, NY 11701.

3

10.     Plaintiff JESCO is a Delaware Limited Liability Company authorized to do business in the state of New York, with its headquarters at 66 – 25 Traffic Ave., Glendale, NY 11385.

11.     Upon information and belief, ZARCONE is a New York resident who resides at 1700 Allison Ct., Hauppauge, New York 11778.

12.     Defendant APOGEE is a New York corporation having a place of business located at 593 Acorn Street, Deer Park NY 11729.  Upon information and belief, APOGEE is either doing business as Apogee Translight, or Apogee Translight is a subsidiary or division of APOGEE.

13.     Upon information and belief, ZARCONE is currently employed by APOGEE.

### The Development of the MLedA/C Flex Tape

14.     MAG-LED began to develop it's A/C powered LED flexible tape strip light product (hereinafter "MLed A/C FlexTape") in 2011, and worked with Seoul Semi-Conductor Company, a Korean corporation, in connection therewith. The Seoul Semi-Conductor Company utilized an LED technology called "Acriche technology," a type of LED module, which was capable of running directly off household AC current.  Previously, in most applications, the tiny LED modules required DC power.

15.     Around February 2013, MAG-LED designed and began to manufacture custom design applications and modules for customers using the Acriche technology.

16.     In late 2013, Jason Greene conceived the initial idea for custom circuit boards that could be strung together in a way to simulate the final circuit design, and MAG-LED manufactured the first prototype of the flex PCB design that worked with AC power and the LED's. The product was new and unique and became an industry first.

18.     Between December 2013 and March 2014, MAG-LED continued to develop the product, redesigning the PCB and circuit to be more efficient, designing and implementing the power distribution system, and perfecting a new connector system.

4

20.     In or about April 2014, Plaintiff JESCO placed its first order to MAG-LED for the MLed A/C Flex Tape.

21.     Defendant ZARCONE was the representative of MAG-LED for the sale to JESCO.

22.     In or about May 2014, MAG-LED received its ETL certification for the MLed A/C Flex Tape, meaning that the product met its applicable published safety standards and could lawfully be sold to customers.

23.     At all times during the product development MAG-LED maintained the confidentiality of the MLed A/C Flex Tape.

24.     On June 2, 2014, Jason Greene filed a provisional patent application for his invention of the MLed A/C Flex Tape.

25.     At all times after the application for the provisional patent was filed, MAG-LED continued to maintain the confidentiality of the MLed A/C Flex Tape.

26.     On or around July 22, 2014, ZARCONE began employment as JESCO.

**JESCO CONFIDENTIALITY AGREEMENT WITH ZARCONE**

27.     Upon commencing employment with JESCO, ZARCONE entered into a written Confidentiality Agreement as employee in which he agreed not to disclose, copy, communicate, or divulge to, or use for the direct or indirect benefit of any person, firm or association, other than JESCO, any confidential and proprietary information belonging to JESCO, including confidential and proprietary information disclosed to JESCO by MAG-LED (See Exhibit 4, ZARCONE Confidentiality Agreement).

28.     ZARCONE signed the JESCO confidentiality agreement on or around July 24, 2014.

29.     Under the terms of the confidentiality agreement:

As an employee of JESCO Lighting Group, LLC … The undersigned acknowledges that from time to time he or she will receive confidential and

5

proprietary information concerning the business of the company. The undersigned further acknowledges that such information, if shared to directly or indirectly with a third parties, could be detrimental to JESCO Lighting because it would place the Company at a competitive disadvantage if disclosed, and that but for his or her employment at the Company she or she would not receive such information, as it is not available to the public.

Accordingly, the undersigned agrees that he or she, except as necessary to [conduit] business of JESCO Lighting, shall not disclose, communicate, or divulge to, or use for the direct or indirect benefit of any person, firm or association other than the company, including but not limited to employee salaries and bonuses, business methods, business policies, procedures, techniques, research, or development projects or results, trade secrets, or other knowledge or processes of or developed by the Company and any other confidential information related to or dealing with the business operations or activities of the Company made known to the undersigned or learned or acquired by the undersigned while employee of the Company.

(See Exhibit 4).

30.     Confidential information or material of the company includes any

information or material:

(a) Generated, collected, or utilized by JESCO Lighting in its operations relating to the actual or anticipated business or research and development of the Company, OR

(b) Suggested by or resulting from any task assigned to the employee or work performed by the employee for or on behalf of Jesco Lighting and that has not been made available to the public.

(See Exhibit 4).

31.     Under the confidentiality agreement, clients and customers of JESCO were entitled to

the same expectation of confidentiality. (See Exhibit 4).

32.     JESCO assigned ZARCONE to assist in the task of developing the MLed A/C Flex

Tape market.

33.     The only two people who were aware of the confidential design and manufacturing

processes being used during this time were ZARCONE and Jason Greene.

6

34.     In or about July 2014, ZARCONE, on behalf of MAG-LED and JESCO, contacted UL for safety certifications for the new product.

35.     ZARCONE had available to him detailed confidential information related to the manufacture of MLed A/C Flex Tape to accomplish this task.

**NON DISCLOSURE AGREEMENT**

36.     Around December 2014, MAG-LED and JESCO executed a Nondisclosure Agreement. ("The Nondisclosure Agreement") in order to continue to protect the confidential information related to the MLed A/C Flex Tape product.

37.     The nondisclosure agreement recognizes the confidential information related to the new product, the MLed A/C Flex Tape product.

**THE LICENSING AGREEMENT**

36.     In order to protect both parties investment in the development of this new technology, MAG-LED and JESCO entered into a Product Design and Royalty Agreement" ("the Licensing Agreement") on or around March 31, 2015.

38.     The Licensing Agreement includes a confidentiality provision prohibiting the disclosure to third parties of any confidential information and documents that the parties disclosed to each other, including information relating to the design and manufacture of MAG-LED's MLed A/C Flex Tape product.

39.     At the time of execution of the Licensing Agreement the information related to the MLed A/C Flex Tape product was confidential.

40.     MAG-LED and JESCO continues to maintain the confidentiality of the MLed A/C Flex Tape to date.

**The APOGEE Infringing Product**

7

41.    In or about March 2017, APOGEE began making, using, advertising, promoting, offering for sale and/or selling its competing A/C flexible LED tape light product, under the name Solara Flex System.

42.    The APOGEE Solara Flex System is identical to and/or substantially similar in design and function to the MLed A/C Flex Tape manufactured by MAG-LED and sold by MAG-LED and JESCO under the MLed trademark.

43.    Without the authorization of MAG-LED, APOGEE has used and displayed MAG-LED's MLed name and trademark in connection with the promotion and advertisement of its Solar Flex System.

44.    However, the A/C flexible tape LED light product sold by APOGEE is inferior in its ratings, materials and qualities to the MLed A/C Flex Tape sold by MAG-LED and JESCO.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Patent Infringement)

45.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1-44 above as if fully set forth herein.

46.    U.S. Patent No. 9,671,075 ("the '075 patent"), a copy of which is attached hereto as Exhibit 2, was duly and legally issued on June 6, 2017 and is entitled "Light Strip And Method For Making a Light Strip."  Jason Greene applied for and is the named inventor in the '075 patent.  The '075 patent issued from an application filed by Jason Greene on or about January 27, 2016, which application is related to the provisional application filed by Jason Greene on June 2, 2014.

47.    U.S. Patent No. 9,746,144 ("the '144 patent"), a copy of which is attached hereto as Exhibit 3, was duly and legally issued on August 29, 2017 and is also entitled " Light Strip And Method For Making a Light Strip."  Jason Greene applied for and is the named inventor in the '144 patent.

LA REDDOLA, LESTER & ASSOCIATES, LLP | 600 OLD COUNTRY ROAD, SUITE 230 | GARDEN CITY, NY 11530 | (516) 745-1951

The '144 patent issued from an application filed by Jason Greene on or about April 27, 2017, which application is related to the provisional application filed by Jason Greene on June 2, 2014.

48.     MAG-LED is the owner by assignment of all right, title and interest in and to the '075 and '144 patents.

49.     APOGEE has infringed and, unless enjoined, will continue to infringe at least claim 1 of the '075 patent, by selling, offering for sale, making, using, distributing and/or importing into the United States the Solara Flex System and/or other A/C powered LED flexible tape light products covered by at least claim 1 of the '075 patent, or equivalents thereof, in violation of 35 U.S.C. §271(a).

50.     APOGEE has infringed and, unless enjoined, will continue to infringe at least claim 1 of the '144 patent, by selling, offering for sale, making, using, distributing and/or importing into the United States the Solara Flex System and/or other A/C powered LED flexible tape light products covered by at least claim 1 of the '144 patent, or equivalents thereof, in violation of 35 U.S.C. §271(a).

51.     ZARCONE has induced and/or contributed to APOGEE's infringement of the '075 and '144 patents in violation of 3 U.S.C. §271(b) and/or (c), by directing, enabling and/or assisting in APOGEE's direct infringement.

52.     Upon information and belief, APOGEE and ZARCONE have knowledge of the '075 and '144 patents.

53.     APOGEE's and ZARCONE's acts of infringement were undertaken willfully, without authority, permission or license from MAG-LED or its assignor.

54.     By reason of APOGEE's and ZARCONE's infringement of the '075 and '144 patents, MAG-LED has suffered irreparable injury and monetary damages in an amount to be determined at trial. MAG-LED's damages include lost profits and/or reasonable royalties adequate to compensate for the infringement by APOGEE and ZARCONE.

9

55.     The infringement by APOGEE and ZARCONE is in direct violation of MAG-LED's rights under Title 35, United States Code, to exclude others from making, using, importing, selling and/or offering for sale inventions claimed in the '075 and '144 patents.  MAG-LED has no adequate remedy at law.  MAG-LED will continue to suffer irreparable harm unless an injunction is issued enjoining and restraining APOGEE and ZARCONE from infringing the '075 and '144 patents.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Trademark Infringement, False Advertising and Unfair Competition in Violation of Section 43(a) of The Lanham Act, 15 U.S.C. § 1125(a))

56.     Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1-55 above as if fully set forth herein.

57.     Since at least as early as March 2013, MAG-LED has continuously used the mark MLed in connection with LED lighting products, including A/C powered LED flexible light strip products claimed in the '075 and '144 patents.  The "MLed" mark is printed on each and every segment of A/C powered LED flexible light strip products sold and offered for sale by MAG-LED and JESCO, under license from MAG-LED.

58.     MAG-LED and JESCO have expended substantial time, money and effort in promoting, advertising and marketing the MLed A/C Flex Tape product and the MLed trademark used in connection therewith.

59.     Through the exclusive and continuous use of the MLed trademark in connection with A/C powered LED flexible light strip products, consumers have come to recognize MAG-LED and its licensee, JESCO, as the source of such goods.  The MLed mark has therefore come to represent valuable good will belonging to MAG-LED.

60.     Notwithstanding MAG-LED's prior rights in and to the MLed trademark, APOGEE and ZARCONE have intentionally used the identical MLed trademark in connection with APOGEE's

LA REDDOLA, LESTER & ASSOCIATES, LLP | 600 OLD COUNTRY ROAD, SUITE 230 | GARDEN CITY, NY 11530 | (516) 745-1951

own A/C flexible tape LED product, without authorization, in an effort to confuse and mislead consumers and thereby unfairly compete with MAG-LED and JESCO.

61.     Moreover, APOGEE's advertising and promotional material falsely and deceptively displays a picture of MAG-LED's A/C Flex Tape product, bearing MAG-LED's MLed trademark, in connection with its competing Solara Flex System (See Exhibit 1 hereto).

62.     APOGEE'S promotional material also displays the trademark registration symbol in connection with the name SOLARA FLEX SYSTEM, and references patent protection.  Upon information and belief, APOGEE does not own a Federal trademark registration for the name SOLARA FLEX SYSTEM, nor does APOGEE have patent protection for its product.  The use by APOGEE of the federal trademark registration symbol with the name SOLARA FLEX SYSTEM, and the reference to patent protection, are false, misleading and deceptive.

63.     Defendants' use of the MLed mark on and/or in connection with their Solara Flex System and/or other A/C powered LED light tape products so nearly resembles and is identical to MAG-LED's MLed trademark, so as to be likely to cause confusion and mistake and to deceive and mislead consumers to mistakenly believe that such A/C powered LED flexible light tape product is MAG-LED's A/C powered LED flexible light tape product, or that such products are sponsored or approved by, or otherwise associated with MAG-LED.

64.     Defendants' use of a picture of MAG-LED's MLed A/C Flex Tape in its catalog and/or in its advertising and promotional material, their use of the Federal Trademark Registration symbol with the Solera Flex System name, and the reference to patent protection are false and/misleading.

65.     The aforesaid acts of Defendants allowed them to sell their goods with minimal effort, expense or promotion, due to the public acceptance of MAG-LED's and JESCO's products sold under MAG-LED's MLed trademark.  As a direct result of the deception by Defendants, MAG-LED has lost

LA REDDOLA, LESTER & ASSOCIATES, LLP | 600 OLD COUNTRY ROAD, SUITE 230 | GARDEN CITY, NY 11530 | (516) 745-1951

control over the quality of the goods with which the MLed trademark is used and is now subject to an association with the lower-cost, poor quality goods produced, marketed and sold by APOGEE.

66.    The acts of APOGEE and/or ZARCONE as heretofore described constitute trademark infringement, unfair competition, false designation of origin, and/or false advertising, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

67.    MAG-LED has been and, absent injunctive relief, will continue to be irreparably harmed by Defendants' aforesaid actions, and has further suffered monetary damages in an amount to be determined at trial. MAG-LED has no adequate remedy at law.

68.    Upon information and belief, the aforesaid acts of APOGEE and/or ZARCONE were undertaken willfully and in bad faith, and with the full knowledge of MAG-LED's prior rights in and to the MLed trademark, for the sole purpose of capitalizing upon the reputation and good will developed by MAG-LED through the use of the MLed trademark.  Plaintiffs are therefore entitled to treble damages an award of reasonable attorneys' pursuant to 15 U.S.C. §1117.

## AS AND FOR A THIRD CAUSE OF ACTION

### (New York General Business Law §360-1)

69.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1-68 above as if fully set forth herein.

70.    By the acts alleged above, defendants have engaged in unfair and fraudulent business practices in violation of the New York General Business Law § 360-1.

71.    Defendants' acts are and have been willful, intentional and in bad faith, and have damaged MAG-LED and JESCO and, unless restrained, will continue to cause irreparable harm to Plaintiffs, including damage to reputation and goodwill, in an amount which cannot be determined without an accounting.

12

72.     Plaintiffs have no adequate remedy at law.

73.     Based on the foregoing, Plaintiffs are entitled to money damages as well as a permanent injunction.

### AS AND FOR A FOURTH CAUSE OF ACTION

### (New York Common Law Unfair Competition)

74.     Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1-73 above as if fully set forth herein.

75.     By the acts alleged above, Defendants have violated and infringed MAG-LED's rights in and to the MLed trademark and have competed unfairly with MAG-LED and JESCO under the common laws of the State of New York.

76.     Defendants' acts are, and have been, willful and have damaged MAG-LED and JESCO, and unless restrained, will continue to cause irreparable harm to Plaintiffs, including damage to reputation and goodwill, in an amount which cannot be determined without an accounting.

77.     Plaintiffs have no adequate remedy at law.

78.     Based on the foregoing, Plaintiffs are entitled to damages as well as a permanent injunction.

### AS AND FOR A FIFTH CAUSE OF ACTION

### (Breach of Contract By Defendant ZARCONE)

79.     Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1-78 above as if fully set forth herein.

80.     Plaintiff JESCO had a binding contractual agreement with Defendant ZARCONE under the Confidentiality Agreement. (See Exhibit 4 JESCO –Zarcone Confidentiality Agreement).

81.     Plaintiff JESCO fully performed its obligations under the Confidentiality Agreement.

13

82.     Defendant ZARCONE materially breached the Confidentiality Agreement by disclosing MAG-LED's and/or JESCO's confidential information to APOGEE.

83.     As a result, Plaintiff JESCO has suffered damages.

84.     Based on the foregoing, Plaintiff JESCO is entitled to damages and legal fees under the Confidentiality Agreement as well as a restoring against ZARCONE, of no less than $5 million dollars or such amount as to this Court seems proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all issues.

## PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment as follows:

(a)     that Defendants have infringed the '075 patent;

(b)     that Defendants have infringed the '144 patent;

(c)     that Defendants' use of the MLed trademark and related acts as heretofore described constitute trademark infringement, false designation of origin, unfair competition, and false advertising, in violation of 15 U.S.C. §1125(a);

(d)     that Defendants' use of the MLed trademark and related acts as heretofore described constitute violations of General Business Law §360-1;

(e)     that Defendants' use of the MLed trademark and related acts as heretofore described constitute unfair completion under New York Common law;

(f)     that ZARCONE be found liable for breach of contract;

(g)     that an injunction be entered permanently enjoining Defendants and their agents, servants, and employees, and all those in active concert and participation with them, or any of them, from (i) infringing the '075 and '144 patents; and/or (ii) using in any manner the aforesaid MLed

14

trademark and variations thereof, or any other name, term, phrase, mark, design, device or symbol which so resembles or is similar to MAG-LED's MLed trademark, so as to be likely to cause confusion, mistake, or deception as to source, origin, sponsorship, approval, affiliation or the like;

(h)     that an accounting be had, and judgment rendered in Plaintiffs' favor, and against Defendants for (i) damages adequate to compensate for the infringement of the '075 and '144 patents, in an amount to be determined at trial, but in no event less than a reasonable royalty, pursuant to 35 U.S.C. §284; and/or (ii) for the profits, income receipts, gains and advantages derived by Defendants from its acts of infringement, unfair competition, false advertising, and other unlawful conduct, and/or for the damages suffered by Plaintiffs' as a result of Defendants' aforesaid acts, and for such sum in addition thereto as the Court shall find just;

(i)     that the infringements and other unlawful acts by Defendants be found to be willful and in bad faith and that Plaintiffs be awarded treble damages pursuant to 35 U.S.C. §284 and/or 15 U.S.C. §1117;

(j)     that attorneys' fees, costs and disbursements incurred in connection with the prosecution of this action be awarded to Plaintiffs; at law and under the contract,

(k)     that Defendants deliver up for destruction all products, labels, signs, prints, packages, wrappers, receptacles, advertisements or other materials in their possession, custody or control, and in the possession, custody or control of those in active concert or participation or otherwise in privity with them, which display or contain the MLed trademark, or variations thereof, or which constitute and/or bear any other device, representation, or statement in violation of the injunction herein requested by Plaintiffs, and that Defendants be ordered to deliver up for destruction all plates, molds, matrices and other means for making the same;

15

(l)     that Defendants file with the Court and serve upon Plaintiffs, within thirty (30) days after service upon Defendants of this Court's injunction issued in this action, a written report, signed under oath, setting forth in detail the manner and form in which Defendants have complied with such injunction;

(m)     awarding Plaintiffs punitive damages based on Defendants' willful, wanton and intentional conduct;

(n)     granting such other legal and equitable relief as this Court deems just and proper.

Dated: Garden City, NY            LA REDDOLA, LESTER & ASSOCIATES, LLP
      March 8, 2018

                                     /s/*Robert J. La Reddola*
                            By: Robert J. La Reddola (RJL 6501)
                               *Attorneys for Plaintiff MAG- LED and JESCO*
                               600 Old Country Road, Suite 230
                               Garden City, New York 11530
                               (516) 745-1951

16